IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Jared Livingston, #279677 ) | |
| ) | Civil Action No. 8:08-3064-HFF-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Warden A.J. Padula, ) | |
| Bruce Oberman, ) | |
| Mrs. C. James, Mrs. ) | |
| Collins, and Jon Ozmint, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the defendants' motion for summary judgment. (Dkt. # 15.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on September 2, 2008, seeking damages for alleged civil rights violations.[1] On December 30, 2008, the defendants moved for summary

---

[1] This date reflects that the petition was date stamped as received on September 2, 2008, at the Lee Correction Institution mailroom. (Pet. Attach. # 2.) *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

judgment. By order filed January 5, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On February 19, 2009, the plaintiff filed a response opposing the defendants' summary judgment motion.

## **FACTS PRESENTED**

The plaintiff is an inmate within the South Carolina Department of Corrections ("SCDC") currently housed in the Lee Correctional Institute ("LCI"). In his complaint, the plaintiff alleges that on November 26, 2007, he was transported to Tuomey Regional Medical Center complaining of stomach pain and vomiting due to a food born illness caused by eating cold food. (Compl. at 3.) He states he was hospitalized for six days and underwent numerous tests, including an MRI, CAT scan, colonoscopy, and endoscopy. (*Id.*) He was diagnosed with colitis (inflamation of the colon) and referred to the prison doctors. He was prescribed a laxative, Miralax. He alleges that his digestive system was damaged from eating cold food for over two years, and he now has to rely on laxatives to move his bowels. (*Id.*) He also alleges that the grievance coordinator, Mrs. James, does not process his grievances within the proper time frame. (Compl. at 3.) He states he has filed grievances on the food and sanitation, but James neglects them. (*Id.*)

He further alleges on July 14, 2008, he filed a sick call request because he was still throwing up and having severe stomach pains, but that Nurse Collins responded that he

had a doctor's appointment scheduled for August 13th. He alleges however that he did not see the doctor on August 13th because the defendant Collins cancelled the appointment which he contends amounts to gross negligence.

He also alleges the prison conditions are unsanitary because the shower is filthy with inmates masturbating on the floors and walls and the drains are clogged. (*Id.*) He alleges bird feces is everywhere. (*Id.*)

Finally, the plaintiff alleges that he is a non-mentally ill prisoner but he is being housed with mentally ill prisoners. (Compl. at 4.) He states the crisis intervention cell is directly below his cell and that the inmates kick, yell, beat, and rap all day and night. (*Id.*) Because of this, he alleges he has been sleep deprived and experiences high levels of tension, mental anguish, emotional distress, and depression. He alleges that he is being psychologically tortured and that Jon Ozmint is responsible. (*Id.*)

The plaintiff is seeking an injunction against all the defendants and actual and punitive damages. (Compl. at 5.)

## **APPLICABLE LAW**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## **DISCUSSION**

**Exhaustion**

The defendants contend that the plaintiff has failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a § 1983 action concerning his confinement. 42 U.S.C.A. § 1997(e) states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In *Porter v. Nussle,* 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the United States Supreme Court held that the PLRA exhaustion requirement requires proper exhaustion. The Court stated that "[a]dministrative law requires proper exhaustion of administrative remedies which means using all steps that the agency holds out, and doing so properly." *Id.* (Internal quotations and citations omitted). Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. *Id.*

In order to exhaust the South Carolina Department of Corrections ("SCDC") administrative remedies, an inmate must file a Step 1 grievance, and give the form to the Institutional Inmate Grievance Coordinator within fifteen days of the alleged incident of

5

which the inmate complains. The Warden must respond to the Step 1 grievance in writing no later than forty days from the filing of the initial grievance. If the inmate is not satisfied with the Warden's response, he must file an appeal of the Step 1 grievance response by filing a Step 2 request for review, with the Inmate Grievance Coordinator within five days of the receipt of the response from the Warden. A responsible official has sixty days to respond to the Step 2 grievance. Only after completing both Steps 1 and 2 in the SCDC grievance process has an inmate properly exhausted a claim under § 1983. 42 U.S.C. § 1997e.

The plaintiff contends that he did not exhaust his administrative remedies because he never received responses to numerous Step 1 grievances he filed. The evidence in the record shows most of these grievances were unprocessed because the plaintiff failed to follow the proper procedure. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 8.) Although the plaintiff alleges none of the grievances were ever returned to him as unprocessed (Pl.'s Mem. Opp. Summ. J. Mot. at 2), the plaintiff did file as an attachment to his complaint a copy of one grievance which was returned unprocessed. (Compl. Attach. #1.) In this grievance, the plaintiff complained of cold food being served. This grievance was returned unprocessed and plaintiff took no further action. (*Id.*)

While the plain language of the statute requires that "available" administrative remedies need be exhausted, a grievance procedure is not "available" if prison officials prevent an inmate from using it. *See Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir.2004); *Miller v. Norris,* 247 F.3d 736, 740 (8th Cir.2001) (allegations that prison officials failed to

respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies). However, "[t]he fact that a grievance was unprocessed, without more, is insufficient to show that Respondents prevented Petitioner from exhausting his administrative remedies." *Bryan v. South Carolina Dept. of Corrections*, 2009 WL 702864, at *3 (D.S.C. March 16, 2009); *see also Peoples v. SCDC,* 2008 WL 1902718, at *1 (D.S.C. April 28, 2008). A returned and unprocessed grievance does not necessarily render remedies "unavailable." *See Peoples,* 2008 WL 1902718, at *1. Further, the plaintiff in this case, was free to file a Step 2 Grievance or otherwise appeal the determination not to process the initial grievance. It appears, however, that the plaintiff did nothing.

Here, there is no evidence that the administrative remedies were unavailable to the plaintiff. None of the plaintiff's claims in his complaint have been fully and properly exhausted prior to the filing of the complaint as required. Accordingly, the undersigned recommends the complaint be dismissed for failure to exhaust administrative remedies. Alternatively, the claims should be dismissed on the merits as discussed below.

**Confinement Conditions**

The plaintiff alleges that the conditions of his confinement violate his constitutional rights. Specifically, he alleges the food is always served cold which he alleges has caused him to be unable to move his bowels without a laxative. He also alleges the shower is filthy with inmates masturbating on the floors and walls and the drains are clogged with hair and other matter. (*Id.*) He alleges birds fly within the prison and bird feces is everywhere. (*Id.*)

Finally, he alleges he is being housed near mentally ill inmates who are disruptive and loud and have caused him sleep deprivation, high levels of tension, mental anguish, emotional distress, and depression. He alleges that he is being psychologically tortured. The defendants contend the plaintiff has failed to state a claim. The undersigned agrees.

The Eighth Amendment provides protection with respect to "the treatment a prisoner receives in prison and the conditions under which he is confined." *Helling v. McKinney,* 509 U.S. 25, 31 (1993). However, the constitutional prohibition against the infliction of cruel and unusual punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991).

To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show 'both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (*quoting Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). As to the second prong, a prison official is deliberately indifferent

if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. *Id.* at 847. Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition. *See Strickler*, 989 F.2d at 1380-81. To survive summary judgment, the plaintiff must show more than de minimis pain or injury. *Id.*

Although prison conditions could reach the level of a constitutional violation if they were to produce "a serious deprivation of a basic human need," there is no indication that the plaintiff has suffered any serious or significant physical or mental injury as a result of these conditions. *Strickler,* 989 F.2d at 1379, 1380-81.

The plaintiff alleges that he suffers stomach pain and chronic constipation requiring the use of laxatives as a result of being served cold food. The Fourth Circuit Court of Appeals has recognized the well-established principal that "inmates must be provided nutritionally adequate food, 'prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it.'" *Shrader v. White,* 761 F.2d 975, 986 (4th Cir.1985) (citations omitted). Failure to meet an inmate's basic nutritional needs is considered cruel and unusual punishment because the inmate relies on prison officials to provide food. Prisons and detention facilities are required to provide "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *See French v. Owens,* 777 F.2d 1250, 1255 (7th Cir. 1985).

Even assuming the food is being served cold, the plaintiff must show a casual connection between the constitutional deprivations and the harm alleged. *See Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir.1986). While the plaintiff alleges the food is inadequate because it is served cold, the plaintiff merely speculates that his stomach problems have been caused by his consumption of cold food. The plaintiff has not offered any evidence that the cold food presents an immediate danger to his health or well-being. *Prophete v. Gilless*, 869 F.Supp. 537 (W.D.Tenn.1994) (food which was cold by the time it was served did not constitute cruel and unusual punishment). Other than his own conclusory allegations, the plaintiff has not shown any connection between being served cold food and his medical condition.[2]

Likewise as to the other alleged prison conditions, other than his own statements, the plaintiff has not offered any facts supporting this conclusion. The court need not accept unsupported conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir.1979). Additionally, the plaintiff has also not shown any connection between the other alleged conditions and any injury.

As for being sleep deprived, this claim lies outside the scope of ordinary discomfort accompanying prison life. *Oliver v. Powell,* 250 F.Supp.2d 593 (E.D.Va. 2002)(holding

---

[2]The plaintiff in his memorandum opposing the defendants' summary judgment motion states that there is no proof that his prior ingestion of foreign objects and a hunger strike caused his stomach problems. (Pl.'s Mem. Opp. Summ. J. Mot. at 1.) He specifically states that expert testimony is needed to determine the cause of his stomach problems. However, the burden is on the plaintiff (not the defendants) to prove the casual link between the alleged constitutional deprivation and injury.

noise is ordinary part of prison life and claims of sleep deprivation due to noise do not rise to the level of an Eighth Amendment claim.). Furthermore, to the extent that the plaintiff is attempting to assert a claim for mental or emotional injury, his claim fails as there is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there is no liability under § 1983 regarding such claims. *See Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir.1985); and *Rodriguez v. Comas,* 888 F.2d 899, 903 (1st Cir.1989).

Moreover, with respect to the subjective element of an Eighth Amendment analysis, the plaintiff has failed to show that the defendants were deliberately indifferent to the plaintiff's needs.  Therefore, based on the foregoing, the plaintiff's Eighth Amendment claims should be dismissed.

**Medical Indifference Claims**

The plaintiff alleges the defendants have been deliberately indifferent to his medical needs.  The defendants contend the plaintiff has failed to state a claim.  The undersigned agrees.

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  *Id.* at 105.  Instead, it is only when

prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

"Deliberate indifference is a very high standard. In *Miltier*, the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." 896 F.2d at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir.1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va.1995) (quoting *Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)).

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee a prisoner receive the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988). The type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F.Supp. 326 (S.D.Ga.1994). The mere fact that a prisoner may believe he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g., Russell v. Sheffer*,

528 F.2d 318, 319 (4th Cir.1975). Incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. *Miltier*, 896 F.2d at 851.

As to the plaintiff's claims of medical indifference against the defendants Mrs. C. James, Bruce Oberman, and Jon Ozmint, these claims should be dismissed. The Fourth Circuit has held that to bring a medical treatment claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.* Under these principles, the plaintiff has not alleged facts stating any claim actionable under § 1983 regarding his course of medical treatment against the defendants James, Oberman, and Ozmint.

Furthermore, to the extent the plaintiff relies on the doctrine of supervisory liability against the defendants Oberman and Ozmint, the plaintiff has failed to make any showing of supervisory liability. "Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of respondeat superior, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (citation omitted). The plaintiff must demonstrate that the prisoner faces a pervasive and unreasonable risk of harm from some specified source, and that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices.

13

*Id. See also Moore v. Winebrenner,* 927 F.2d 1312 (4th Cir.), cert. denied, 502 U.S. 828 (1991); *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984), cert. denied, 470 U.S. 1035 (1985). Accordingly, the defendants Oberman and Ozmint should be dismissed.

On the merits of the claims against the defendant Collins, there is no evidence that she has been deliberately and intentionally indifferent to the plaintiff's medical needs. The plaintiff has failed to show that he was denied medical treatment by the defendant Collins. In fact, the plaintiff acknowledges in his complaint that he has been treated. Further, a review of the plaintiff's medical records show he has not been denied medical care. These records indicate that he was transported to Tuomey Regional Medical Center on November 26, 2007, and hospitalized until December 1, 2007. He was diagnosed with probable colitis. There was no mention nor any evidence of food poisoning.

The plaintiff's medical records show that the plaintiff has suffered from stomach ailments and constipation for years. (*See e.g.* Defs'. Mem. Supp. Summ. J. Mot. Attach. # 11- Pl.'s Med. Records at 4, 9, 17-18). On December 20, 2001, the plaintiff was seen at the emergency room of Springs Memorial Hospital in Lancaster for abdominal pain. (Defs'. Mem. Supp. Summ. J. Mot. Attach. #  - Pl.'s Med. Records). Then, on September 9, 2004, the plaintiff was treated at Marlboro Park Hospital in Bennettsville following the ingestion of a foreign object. He underwent abdominal and chest x-rays. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 7 - Pl.'s Med. Records). On November 5, 2004, the plaintiff was treated for ingesting a razor blade. (Defs'. Mem. Supp. Summ. J. Mot. Attach. # 6 - Pl.'s Med. Records). From January 10, 2005, through January 21, 2005, the plaintiff received

psychiatric treatment after going on a hunger strike. The plaintiff alleged that his food was being poisoned in prison. (Defs'. Mem. Supp. Summ. J. Mot. Attach. - Pl.'s Med. Records). As alleged in the complaint, the plaintiff was hospitalized from November 26 through December 1, 2007, for stomach pains and was diagnosed with probable colitis. On July 3, 2008, the plaintiff underwent numerous tests and procedures in an effort to provide a diagnosis, including an abdominal ultrasound which revealed no abnormalities. (Defs'. Mem. Supp. Summ. J. Mot. Attach. - Pl.'s Med. Records).

In his response to the defendants' summary judgment motion, the plaintiff acknowledges he "was seen, treated, provided medication, and diagnostic test(s)." (Pl.'s Mem. Opp. Summ. J. Mot. at 1.) However, he alleges that the defendants failed to find the reason for his ailments. Viewing this claim in a light most favorable to the plaintiff, he is alleging that the treatment was insufficient not that the defendants were deliberately indifferent to him. The plaintiff has shown nothing more than a disagreement with the medical treatment provided, not that he was denied medical treatment. At most, the plaintiff's complaint sounds of medical negligence, which is not actionable under 42 U.S.C. § 1983. *Miltier*, 896 F.2d at 851 (holding for plaintiff to succeed on medical indifference claim, treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness . . . mere negligence or malpractice does not violate the Eighth Amendment .")

The plaintiff also alleges medical indifference based upon his allegation that the defendant Collins cancelled a doctor's appointment the plaintiff was scheduled to have with

15

Dr. Pate on August 13, 2008. (Compl. at 4.) Even assuming this allegation is true, the plaintiff has alleged nothing more than a delay in treatment. "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d 1176, 1188 (11th Cir.1994). The plaintiff has failed to allege how any such delay resulted in a detrimental effect. Accordingly, the plaintiff has failed to state a 1983 claim for medical indifference against any of the defendants and thus his medical indifference claims against the defendants should be dismissed.

**Failure to Respond to Grievance**

The plaintiff alleges his grievances have not been properly processed. Even if the defendants failed to respond to the plaintiff's grievances, the plaintiff has not stated a constitutional claim. The law is well-settled that there is no constitutional right to a grievance procedure. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-138 (1977). Violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1944) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure").

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Defendants' motion for summary judgment (Dkt. # )  be GRANTED and the Plaintiff's claims be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

          s/Bruce Howe Hendricks
          United States Magistrate Judge

June 8, 2009
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).